Mr. Chief Justice Sharkey
delivered the opinion of the court.
The appellees exhibited their bill in chancery to enjoin proceedings in a possessory action, instituted by the appellants. The material allegations in the bill are, that by treaty with the Chickasaw tribe of Indians, concluded on the 24th of May, 1834, *382 certain quantities of land were reserved to the Indians. That a certain Indian woman was duly enrolled according to the provisions of the treaty as being entitled to one section of land, which it is averred was located for her, being the land in controversy, on the 6th day of October, 1837; and that the complainants, on the 7th of the same month, entered into a contract with the re-servee for her land. Title did not then pass, but she gave a power of attorney to make a title, when her location should be duly ratified. The attorney afterwards made a title, but it was never completed by .proof and registration. The Indian herself afterwards made a title, which it is admitted is not complete for want of the certificate of some of the approving agents; but it is insisted that an equitable title passed, and that complainants are entitled to protection against the title of the appellants. Complainants went into possession of the land at the time of making the contract, and still hold possession. It is admitted in the bill that the respondents have a title, but it is insisted that it was obtained by fraud, and is therefore void. The particular acts of fraud alledged are these: 1st. That the deed to appellants bears date prior to the location for the Indian, and at a time when she had no right to convey. 2d. That the agent has' not certified that the purchase money was paid as required by the treaty. 3d. That the deed was blank when signed, and not filled up until after the Indian’s right had been located, and after complainants had purchased, and then it was done by the appellants with a full knowledge of complainants’ purchase. 4th. That the certificate of the agent was obtained by fraud and misrepresentation, in concealing from the agent the purchase of complainants, and misrepresenting the identity of the Indian under whom they claimed, falsely representing that, they claimed under the woman who had sold to complainants, when their claim was derived from an Indian man. This is the outline of the bill, to which respondents demurred, and have taken an appeal from the decree of the chancellor overruling the demurrer.
Considering the allegations in the bill to be admitted by the demurrer, we might easily dispose of the case, so far as to settle this preliminary controversy, without going into an enquiry into the nature of complainants’ title. Possession alone is a protec *383 tion against a title obtained in fraud. But the nature of the Indian title has been discussed by counsel on both sides, and a proper respect for the arguments of counsel requires of us at least a brief review of the grounds assumed in the argument.
It is insisted that the complainants have shown no title, either legal or equitable, and that without title of some kind they cannot invoke the aid of a court of chancery, there being nothing to give it jurisdiction. To say nothing of the conclusion, we are not prepared to admit the premises. The 6th article of the treaty commences with these words: "Also reservations of a section to each shall be granted to persons male and female, not being heads of families, who are of the age of twenty-one years and upwards, a list of whom, within a reasonable time, shall be made out by the seven persons herein before mentioned, and filed with the agent, upon whose certificate of its believed accuracy, the register and receiver shall cause said reservations to be located upon lands fit for cultivation, but not to interfere with the settlement rights of others.” By this language, a title in fee passed to such persons as were above the age of twenty-one. The term "reservation” was equivalent to an absolute grant. The title passed as effectually as if a grant had been executed. The same term used in the Choctaw treaty, was held to pass title, although it was then provided that a grant should issue. Newman v. Harris and Plummer, 4 Howard, 522. In this case, the treaty has not contemplated a further grant, or other evidence of title, showing conclusively that by the terms used it was intended that a perfect title was thereby intended to be secured. The Indian then under whom complainants claim, had in herself an absolute and unconditional title in fee simple. The title was conferred by the treaty, it was not however perfect until the location was made; location was necessary to give identity. The location it seems was duly made on the 6th of October, 1837, and thus the title to the land in controversy was on that day consummated by giving identity to that which was -before unlocated. Had the Indian power to convey, and has she really conveyed to the complainants, even such right as amounts to an equitable title ? Under certain restrictions she certainly had a right to convey. It is not necessary that we should enquire how far such restrictions *384 are consistent with the character of a fee: no doubt it was competent by treaty stipulation to impose those restrictions in the present case. It has always been conceded that conveyances by Indians could only be made according to the conditions imposed by treaty. It is not necessary in the present case to contend for an extension of that power. By the fourth article of the treaty, it is provided that the reservations made by that treaty shall not be sold, leased, or disposed of, unless it appear by the certificate of at least two out of seven persons therein named, that the party claiming the reservation, is capable of taking care of, and managing his or her affairs. This capacity must also be certified to by the agent, to the best of his knowledge or information, who is also to certify that a fair consideration has been paid, in addition to which the deed of conveyance was to be approved by the president of the United States or his agent, and to be recorded according to the laws of the state in which the land was situated. These were all conditions to be performed in order to perfect conveyance from the Indian.
It is averred in the bill that the Indian has made a deed, but that the requisite certificates have not been procured, in consequence of the fraud practiced by the appellants. The Indian then had the fee, and perhaps strictly the certificates should have been procured before a sale or conveyance, and yet there is nothing in the treaty which authorizes us on a fair construction, to consider these as conditions precedent. Suppose the Indian had conveyed and after the conveyance the requisite certificates had been procured, then of course the title would be perfect. What would make it perfect ? Not the certificates alone, but first the deed and then the certificates. On procuring the certificates, the deed would relate back to the time of its date. It is to be inferred from a part of the fourth article, that the certificates were mere requisites or links in the chain of conveyance, the deed being the first step towards a complete title. This conclusion is justified by the language employed. After providing that two of the seven persons named shall give a certificate that the party is capable of managing his or her affairs, and that the agent shall also certify to the same effect, and that a fair price has been paid, it proceeds as follows: “and thereupon the deed of conveyance shall be valid, *385 provided, the President of the United States, or such other person as he may designate, shall approve the same, and endorse it on the deed.” This language seems to pre-suppose the existence of the deed before the certificates are required to be given, and that on the procurement of the certificates, the conveyance should be complete.
The Indian then had a title to the land, and on the 7th of October, 1837, she entered into a contract to convey, and gave a power of attorney for that purpose. ' The attorney afterwards conveyed, but the deed was never properly proven, in consequence of which defect, the Indian herself afterwards conveyed, and her conveyance would have been perfect with the proper certificates, which the parties were prevented from procuring by the fraudulent acts of the respondents. The first step towards a perfect conveyance was performed, the subsequent steps were prevented by the respondents, to the prejudice of complainants. The equitable title is thus abundantly shewn; which I understand to be a right imperfect at law, but which may be perfected by the aid of a court of chancery, either by compelling parties to do that which in good faith they are bound to do, or by removing obstacles interposed in bad faith, to the prejudice of another. A mere entry it seems has been held to constitute an equity. Certainly a contract for the purchase of land does, when founded on a sufficient consideration, and entered into with the proper solemnity. In this case there was such a contract. The title is not a complete legal title, but it can be perfected by a court of chancery, at least so far as to remove the impediments improperly interposed.
But it is further insisted, that the respective rights of the parties have undergone a proper investigation by the agents appointed for that purpose, who determined the matters before them as judicial officers, and that their decision in favor of the respondents is final and conclusive, and cannot be reviewed collaterally by any other tribunal.
These agents were not judicial officers; they were not empowered to settle and determine the rights of parties, or any right whatever. The seven persons mentioned in the 4th article, were confined in their duty to certify to a single question' of fact, to wit, that the Indian who was about to sell his reserve was capa *386 ble of taking care of his own affairs; and the Indian agent had only to certify to the additional fact, that a fair price had been paid. These certificates were mere preliminaries to a sale, and not even obligatory on any one, as the President still had the power to approve or disapprove the sale. The agents were ministerial officers; but if their powers were judicial it would not alter the case. Any act, however solemn, even though it be a judgment of a court of competent jurisdiction, may be set aside, if procured by fraud. 1 J. C. Rep. 406; Mitford’s Pleading, 128, and note. Fraud vitiates every thing into which it enters. But it is insisted that this question of fraud must have - been investigated and decided on by the agents. The history of the case leads to no such conclusion, nor do the certificates justify such inference. Fraud in the procurement of these certificates is charged directly and circumstantially. It was fraudulent to procure the agents’ certificate under a representation that there was no conflicting claim, knowing that the complainants had- purchased in good faith. It was fraudulent to procure a certificate by substituting one Indian for another. If the bill is true, these are questions which could not have been decided by the proper agent. The very ground of the charge is, that the agent himself was imposed upon and deceived. This position is therefore untenable.
It is frequently the case that different modes of defence may be adapted to different parts of the bill, but if it contain an allegation of fraud, it is a general rule that the allegation of fraud must-be denied by answer, whatever defence may be adopted as to the other parts of the bill; because fraud gives jurisdiction to the court and lays a foundation for relief, hence a general demurrer to a bill containing such an allegation cannot be allowed. So if the defendant should plead to the bill, he must still deny the fraud by answer as well as by averment in the plea. Mitford’s Pleading, 239 — 298. An application of this rule to the case before us must show the impropriety of the demurrer, so far at least as the allegation of fraud is to be met by it. The demurrer admits that the deed was filled up long after it was executed; that the certificates were procured by fraud and misrepresentation; that one Indian was substituted for another; and certainly, with such facts admitted, a court of chancery could not hesitate to entertain jurisdiction and give relief. Decree affirmed.